In accordance with the directives of the North Carolina Court of Appeals, the undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged contraction of an occupational disease or injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff-employee and defendant-employer.
3. Defendant-employer is self-insured, with Compsource as the servicing agent.
4. Plaintiff's average weekly wage, as shown on the stipulated Form 22, was $273.33, yielding a compensation rate of $182.21 per week.
5. Plaintiff's employment with defendant-employer ended April 24, 1995.
6. Plaintiff's medical records were stipulated into evidence.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission adopts the findings of fact found by the Deputy Commissioner and also finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old. She has an eleventh grade education.
2. Plaintiff began working for defendant-employer in 1987. She left for a period of time and returned in 1990.
3. Plaintiff was a supervisor of the laundry room for defendant-employer. Her job required her to perform repetitive tasks with her hands including grasping and pulling heavy linen from commercial size washing machines and dryers, loading these machines, and folding the linen for substantial periods of time equal to or exceeding one-half of her normal work day. Plaintiff frequently worked seven days a week.
4. On 16 July 1993, plaintiff sustained a compensable injury by accident when she twisted her left wrist. This injury was the subject of a Form 21 Agreement for compensation approved by the Industrial Commission on 23 September 1993 in Industrial Commission docket number 360422. Plaintiff was out of work for approximately two months, during which time she was paid compensation by defendant-employer.
5. Plaintiff returned to work in September 1993 and continued to work her regular job.
6. On 11 January 1995, plaintiff felt a pop in her right wrist as she was pulling linen out of a washing machine. Her wrist became swollen and painful. Plaintiff reported the incident to her boss, Patricia Booker. She was unable to obtain medical treatment until 3 March 1995, when she saw Dr. Michael Wilkerson at Coastal Medical Center who recommended physical therapy. Plaintiff continued to work but experienced recurrent pain and swelling in her right hand. As a result of the pain in her right hand, she began to use her left hand more frequently, which caused pain to develop in her left wrist and thumb.
7. Plaintiff sought medical treatment from Dr. Leonard Nelson, an orthopaedic surgeon, and was unable to work for a period of approximately one week.
8. Plaintiff worked her regular job until 24 April 1995, at which time she resigned for reasons unrelated to the condition in her hands. Plaintiff was taken out of work due to her hands as of 9 May 1995.
9. Plaintiff has chronic bilateral de Quervain tenosynovitis and left trigger thumb due to the repetitive use of her hand involved in her employment with defendant-employer.
10. As a result of her employment with defendant-employer, plaintiff was placed at an increased risk of developing de Quervain tenosynovitis and left trigger thumb as compared to members of the general public not so exposed. The repetitive work required by plaintiff's employment with defendant-employer caused or was a significant contributing factor in the development of these conditions.
11. On 7 August 1995, orthopedist Dr. Wallace Andrew performed left de Quervain release and A1 pulley release on plaintiff. She was released to return to her regular work with no work restrictions by Dr. Andrew as of 28 August 1995.
12. The Full Commission reviewed and considered the testimony of Dr. Leonard Nelson, Dr. Andrew Jones, and Dr. Wallace Andrew. The Full Commission gives greater weight to the testimony of Dr. Andrew and finds that plaintiff was released and able to return to work with no restrictions on 28 August 1995. Plaintiff was unable to earn wages in the same employment or in any other employment from 9 May 1995 through 28 August 1995. To the extent that this finding contradicts plaintiff's testimony, that testimony is found to be not credible.
13. As a result of the compensable occupational diseases, plaintiff has reached maximum medical improvement and retained a ten percent (10%) permanent partial impairment to her left hand, and a seven percent (7%) permanent partial impairment to her right hand.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of her employment with defendant-employer, plaintiff developed bilateral de Quervain syndrome and left trigger thumb which are due to causes and conditions that are characteristic of and peculiar to her employment with defendant-employer and which are not ordinary diseases of life to which the general public is equally exposed outside of the employment. Plaintiff, accordingly, has contracted the above-named occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of her contraction of compensable occupational diseases, plaintiff is entitled to receive temporary total disability compensation at the rate of One Hundred Eighty-Two and 21/100 Dollars ($182.21) per week from 9 May 1995 until 28 August 1995. N.C. Gen. Stat. § 97-29.
3. As a result of her contraction of compensable occupational diseases, the plaintiff has a ten percent (10%) permanent partial disability of her left hand, and seven percent (7%) permanent partial disability of her right hand, and is entitled to be paid One Hundred Eighty-Two and 21/100 Dollars ($182.21) for a total thirty-four weeks. N.C. Gen. Stat. § 97-31.
4. As a result of her contraction of compensable occupational diseases, plaintiff is entitled to continuing medical benefits which may tend to effect a cure, give relief, or lessen her period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. Plaintiff has failed to show by the greater weight of the credible evidence of record, that she is totally and permanently disabled as a result of her contraction of an occupational disease. N.C. Gen. Stat. § 97-29.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. For her compensable contraction of occupational diseases, defendant-employer shall pay temporary total disability compensation at the rate of One Hundred Eighty-Two and 21/100 Dollars ($182.21) per week from 9 May 1995 until 28 August 1995. Such amount as has accrued shall be paid to plaintiff in a lump sum subject to an attorney's fee approved below.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of One Hundred Eighty-Two and 21/100 Dollars ($182.21) for a total of thirty-four weeks on account of plaintiff's permanent partial disability of her hands. This amount shall be paid in a lump sum subject to an attorney's fee approved below.
3. Defendant-employer shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable contraction of occupational diseases for so long as such treatment is reasonably required to effect a cure, give relief, or tends to lessen plaintiff's period of disability.
4. Attorney's fees in the amount of twenty-five percent (25%) of the lump sum Award in paragraphs one and two of this Award, shall be deducted from the amount payable to plaintiff and paid directly to her counsel.
5. Defendant shall pay the costs.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ WANDA B. TAYLOR DEPUTY COMMISSIONER
S/______________________ PHILLIP A. HOLMES DEPUTY COMMISSIONER